UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

MICHAEL LYON,

        Plaintiff,

v.                                                                  21-CV-857 (JLS)

WILLIAM A. SCHROM,

        Defendant.

_____

## DECISION AND ORDER

At the time he filed this complaint, *pro se* plaintiff Michael Lyon was a prisoner confined at the Chemung County Jail ("Chemung"). He filed a civil rights action seeking relief pursuant to 42 U.S.C. § 1983. *See* Dkt. 1. Lyon moved to proceed *in forma pauperis* ("IFP") (Dkt. 9),[1] and submitted a letter motion (Dkt. 20) that the Court construed as a request for a temporary restraining order ("TRO") and a preliminary injunction ("PI"), *see* Dkt. 21. The Court directed service of Lyon's TRO/PI motion and complaint on Defendant and deferred initial screening of Lyon's claims. Dkt. 21. Defendant filed a memorandum in opposition to the TRO/PI Motion (Dkt. 35) and an answer to the complaint (Dkt. 36). On January 14, 2022, the Court denied Lyon's TRO/PI motion.

---

[1] The Court denied Lyon's IFP motion, with leave to submit an amended IFP motion or pay the filing fee. *See* Dkt. 10. Lyon then paid the filing fee.

Although Lyon paid the filing fee, the Court must screen his complaint under 28 U.S.C. § 1915A(b).[2] For the below reasons, certain of Lyon's claims may proceed to service and others are dismissed, with leave to amend.

## DISCUSSION

### I. Legal Standard

Section 1915 "provide[s] an efficient means by which a court can screen for and dismiss legally insufficient claims." *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (citing *Shakur v. Selsky*, 391 F.3d 106, 112 (2d Cir. 2004)). The Court shall dismiss a complaint in a civil action in which a prisoner seeks redress from a governmental entity, or an officer or employee of a governmental entity, if it determines that the action (1) fails to state a claim upon which relief may be granted or (2) seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b)(1)–(2).

Generally, the Court will afford a *pro se* plaintiff an opportunity to amend or to be heard prior to dismissal, "unless [it] can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." *Abbas*, 480 F.3d at 639 (internal quotation marks omitted). But the Court may deny leave to amend where amendment would be futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993) ("Where

---

[2] Aside from his complaint, Lyon presents additional allegations in subsequently letter filings and pleadings. The Court considers these documents together when screening Lyon's claims. *See* Dkts. 1, 7, 8, 17–20, 22–25.

it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend.").

When evaluating the complaint, the Court must accept all factual allegations as true and must draw all inferences in the plaintiff's favor. *See Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2008); *Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Boykin v. Keycorp*, 521 F.3d 202, 216 (2d Cir. 2008) ("even after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases"). A "court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004), but even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure, *Wynder v. McMahon*, 360 F.3d 73, 79 n.11 (2d Cir. 2004).

To state a claim under 42 U.S.C. § 1983, "the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875–76 (2d Cir. 1994)). Section 1983 "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

3

## II. Lyon's Allegations

Lyon alleges the following facts. On June 16, 2021, Chemung County Sheriff's Department "unlawfully" searched Lyon's home without a search warrant. Dkt. 8, at 1. When Lyon approached the officers to question them, he was "grab[b]ed by two officers and slam[m]ed on [his] face." *Id.* Lyon "did not [r]esist" but sustained several bruises and lacerations during the use of force. *Id.* While detained, Lyon was unable to visit with his family, friends, and his attorney because "they told [him that there is] not [enough] staff to open visit[ation]." Dkt. 1, at 1. And he was not "ge[t]ting [the] medical care [he] need[ed]." Dkt. 7, at 1.

Lyon fought with inmate Mcarthur one week after warning Correction Officer ("CO") Angela Calkins that Lyon was having problems with Mcarthur, and that Mcarthur "needs to get moved off C-Block [before] something happ[ens.]" *Id.* Calkins responded: "something needs to happ[e]n to him"; and "[g]ood I hate him." *Id.*

On September 19, 2021, Lyon submitted a religious request for a "harvest feast" on September 23, 2021. Dkt. 19, at 3. On September 21, 2021, Major Raymond Hodge responded to the request and asked for more information, including "what" and "when is Harvest Feast," what is "the background of Harvest Feast," why Lyon feels entitled to celebrate Harvest Feast, and to which religion does Harvest Feast belong. *Id.* at 4. Lyon replied: "Harvest Feast is on [the] 23[rd.] This festival marks the coming of winter and the celebration of a successful harvest to sustain the people. Some groups offer this blot to odin, others honor Thor." *Id.* at 5. Lyon also identified his religion as "heathen-odinist-Asatra" and "faith with the gods-our way-Pagan" and "Heathen," and listed other significant dates, namely: "October-16- Feast of the Disir/Alfablot (Winter

4

Nights)," "November-11- Feast of the Einherjar," and December-20 and 21- High Feast of Yule (Mother Night)." *Id.* On September 23, 2021, Major Hodge denied Lyon's request "based on the facts" supplied and his research, which "contradict[ed] most of the facts" provided, including the dates of the Harvest Feast. *Id.* at 2. Additionally, Major Hodge asked for "a name and contact information of someone that can give [him] more information and or provide written information about anything [Lyon is] entitled to based on [his] religion." *Id.*

Lyon also claims that he is detained in cells where "raw sewage backs up in other cells when [the] toilet is flushed," and where there is dirty ventilation and showers with dust and mold. Dkt. 20, at 1. After Lyon moved for a TRO, he states that he was moved to a cell without a sink, and his magazines were destroyed. Dkt. 24, at 1.

## III.  Constitutional Claims

### A.    Municipal Liability

A local government official may not be held liable under Section 1983 unless the plaintiff "suffered the denial of a constitutional right that was caused by an official municipal policy or custom." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 257 (2d Cir. 2020) (internal quotation marks omitted). To plead municipal liability under Section 1983, a plaintiff must allege (1) an official custom or policy that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right. *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020).

An "official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and

5

widespread as to practically have the force of law." *Id.* (internal quotation marks and alteration omitted). A government official may not be subject to Section 1983 liability solely on a *respondeat superior* theory. *Collins v. City of Harker Heights*, 503 U.S. 115, 121 (1992); *see also Vippolis v. Vill. of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985) (requiring a showing that a municipality took some action that caused plaintiff's injuries "beyond merely employing the misbehaving officer").

Here, Lyon alleges that he was unable to have visitation because "they told [him there was] not [enough] staff to open visit[ation]." Dkt. 1, at 1. It is unclear from this bare allegation whether the visitation restriction was an official municipal custom or policy, as required to support a municipal liability claim. *See Iacovangelo v. Corr. Med. Care, Inc.*, 624 F. App'x 10, 13 (2d Cir. 2015); *Matusick v. Erie Cnty. Water Auth.*, 757 F.3d 31, 62–63 (2d Cir. 2014) (widespread and persistent practice); *Jones v. Town of E. Haven*, 691 F.3d 72, 81 (2d Cir. 2012) (plaintiff failed to show policymaking official's "express[]" or "tacit[]" ratification of low-level employee's actions). Therefore, this claim is dismissed, with leave to amend to include additional allegations, if possible. Any amended complaint should identify the municipal policy or custom that caused the alleged constitutional violation.

## B.    Denial of Visitation

The Due Process Clause of the Fourteenth Amendment proscribes punishment for a detainee "prior to an adjudication of guilt." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). But a pre-trial detainee may be subjected to the "restrictions and conditions of the detention facility" for safety purposes so long as those restrictions are constitutional. *Id.* at 536–37. The Supreme Court recognized that "[l]oss of freedom

6

of choice and privacy are inherent incidents of confinement" and will not automatically be designated as "punishment." *Id.* at 537. Thus, absent a showing of punitive intent, a condition or restriction that is "reasonably related to a legitimate governmental objective" is not considered punishment. *Id.* at 539; *see also Block v. Rutherford*, 468 U.S. 576, 588 (1984) (detention facility's blanket ban on contact visits was reasonably related to security and safety measures).

Here, Lyon does not allege that he was informed that visitation would be permanently closed; rather, he alleges that he was told there was insufficient staff to open visitation. Even accepting this allegation as true, courts recognize the need to balance an inmate's "right to humane treatment" against a prison facility's responsibility to keep the prison safe. *Rhem v. Malcolm*, 371 F. Supp. 594, 605 (S.D.N.Y. 1974), *supplemented*, 377 F. Supp. 995 (S.D.N.Y. 1974), *aff'd and remanded*, 507 F.2d 333 (2d Cir. 1974); *Block*, 468 U.S. at 589 ("We hold . . . that the Constitution does not require that detainees be allowed contact visits when responsible, experienced administrators have determined, in their sound discretion, that such visits will jeopardize the security of the facility.").

Because the complaint does not contain sufficient allegations to support a due process claim based on denial of visitation, this claim is dismissed. But Lyon has leave to amend to include additional allegations, if possible, to support this claim.

### C.    Denial of Medical Care

Courts analyze a pre-trial detainee's deliberate indifference claim under the Due Process Clause of the Fourteenth Amendment. *See Darnell v. Pineiro*, 849 F.3d 17, 32 (2d Cir. 2017).

First, such a claim must satisfy an objective prong, which requires allegation of a "sufficiently serious" deprivation. *Id.* at 30. A serious medical condition exists where an injured or ailing prisoner was left untreated resulting in "further significant injury or the unnecessary and wanton infliction of pain." *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)) (prison officials were deliberately indifferent where they failed to treat inmate's cavity, a degenerative condition which, when left untreated, is prone to causing agony); *see also Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) ("[T]he alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." (internal quotation marks omitted)). Second, the claim must satisfy a subjective prong and allege that a defendant "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed . . . even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.

Here, the complaint lacks allegations to support both the objective and subjective prongs. Lyon alleges only: "[I'm] on Albuterol[;] it [is] a he[a]lth problem for me[.] [I'm] not getting medical care I need." Dkt. 1, at 1. *Cf. Charles v. Orange Cnty.*, 925 F.3d 73, 81 (2d Cir. 2019) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (internal quotation marks omitted)). Lyon alleges no other facts related to the severity of his medical need or whether any prison staff were deliberately indifferent to this need. *See Hathaway*, 99 F.3d at 553

8

(finding that both prongs must be satisfied in order for a plaintiff to prevail on a denial of medical care claim).

The Court therefore dismisses this claim.  But Lyon has leave to amend this claim to include additional allegations, if possible.

## D.    Illegal Search

The Fourth Amendment guarantees individuals "[t]he right . . . to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.  To support a violation of the Fourth Amendment, the actions conducted under the color of state law must have amounted to a search or seizure, and that search or seizure must have been unreasonable.  *See Day v. Morgenthau*, 909 F.2d 75, 77 (2d Cir. 1990).  Searches and seizures "conducted without warrants are presumptively unreasonable." *Ruggiero v. Krzeminski*, 928 F.2d 558, 563 (2d Cir. 1991).  But a plaintiff's conclusory allegation of a constitutional violation, "without evidentiary support or allegations of particularized incidents, does not state a valid claim." *Butler v. Castro*, 896 F.2d 698, 700 (2d Cir. 1990).

Here, Lyon alleges no facts to support a Fourth Amendment claim.  He merely alleges, in conclusory fashion, that the Chemung County Sheriff's Department executed a warrantless search of his home. *See* Dkt. 8, at 1; *see also Paycom Billing Servs., Inc. v. Mastercard Int'l, Inc.*, 467 F.3d 283, 289 (2d Cir. 2006) ("[W]e do not permit conclusory statements to substitute for minimally factual allegations." (internal quotation marks omitted)); *Lautman v. Vill. of Saugerties, N.Y.*, No. 1:13-CV-00264, 2014 WL 1653189, at *6 (N.D.N.Y. Apr. 23, 2014) ("Plaintiff's allegations regarding illegal search are entirely conclusory and insufficient to plead a plausible

cause of action."); *Cannon v. Wood*, No. 9:10-CV-1332, 2011 WL 7071100, at *7 (N.D.N.Y Aug. 12, 2011) (dismissing plaintiff's illegal search claim where plaintiff merely "state[d] in a conclusory fashion that he was subjected to an illegal search" and the complaint was " devoid of any factual allegations to support this claim"). Because Lyon does not allege enough to support a Fourth Amendment claim, the Court dismisses this claim, with leave to amend to include additional allegations, if possible.

Even if Lyon amends his complaint to allege a claim consistent with the above standard, the favorable termination rule set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994), may bar his claim. In particular, to recover damages under Section 1983 for harm "attributable to an unconstitutional conviction or sentencing," the conviction or sentence must first be invalidated. *See id.* at 489–90. Lyon does not allege that any resulting criminal proceedings were terminated in his favor.[3] Any amended pleading should show cause why a Fourth Amendment claim is not barred by *Heck*.

### E.    Excessive Force

The Fourth Amendment "prohibits the use of unreasonable and therefore excessive force by a police officer in the course of effecting an arrest." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). The reasonableness of the force used is

---

[3] Under certain circumstances, a plaintiff may sue for damages resulting from an unlawful seizure of evidence where the action, "even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful." *Heck*, 512 U.S. at 487 n.7 (evidentiary "doctrines like independent source and inevitable discovery and especially harmless error" may allow an unreasonable search claim to lie (internal citation omitted)). Lyon does not allege such circumstances. Moreover, "to recover compensatory damages" based on an unlawful search, a plaintiff must prove "actual, compensable injury" that "does *not* encompass the 'injury' of being convicted and imprisoned." *Id.*

10

judged from the perspective of a reasonable officer at the scene, and accounts for the fact that officers often must make split-second decisions. *See Graham v. Connor*, 490 U.S. 386, 396–97 (1989). This reasonableness inquiry is objective, and requires courts to view officers' actions "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation," rather than viewing officers' actions "with the 20/20 vision of hindsight." *Id.* Courts focus on "the officer's knowledge of circumstances immediately prior to and at the moment that he made the split-second decision to employ [such] force," *Salim v. Proulx*, 93 F.3d 86, 92 (2d Cir. 1996), and account for "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether the suspect [was] actively resisting arrest or attempting to evade arrest by flight," *Hemphill v. Schott*, 141 F.3d 412, 417 (2d Cir. 1998) (citing *Graham*, 490 U.S. at 396).

Moreover, "[n]ot every push or shove [is a Fourth Amendment violation,] even if it may later seem unnecessary in the peace of a judge's chambers." *Ketcham v. City of Mount Vernon*, 992 F.3d 144, 149 (2d Cir. 2021) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)). A police officer who uses "significant force against an arrestee who is no longer resisting and poses no threat to the safety of officers or others" violates the Fourth Amendment. *Jones v. Treubig*, 963 F.3d 214, 225 (2d Cir. 2020). Because "the right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it," determining whether the amount of force an officer used is reasonable "requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment

11

interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (citations and internal quotation marks omitted).

Here, Lyon alleges that two officers with the Chemung County Sheriff's Department used excessive force when searching his home on June 16, 2021. *See* Dkt. 8, at 1. Lyon alleges that, when he asked why the officers were in his home, the officers grabbed Lyon and slammed him on the floor. *Id.* He alleges that he was not resisting the officers, and that he was left with several bruises and lacerations from the altercation. *Id.* For screening purposes,[4] Lyon alleges sufficient facts for an excessive force claim against two unidentified Chemung County Sheriff's deputies, Deputy Doe #1 and Deputy Doe #2, to proceed to service.

### F.    Free Exercise of Religion

As relevant here, the First Amendment provides: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. The First Amendment's Free Exercise Clause "requires government respect for, and noninterference with, the religious beliefs and practices of the Nation's people." *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005).

Prisoners "retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). But a prisoner's right to practice his religion "is . . . not absolute." *Salahuddin v. Coughlin*, 993 F.2d 306, 308 (2d Cir. 1993) (citing *Benjamin v. Coughlin*, 905 F.2d 571, 574 (2d Cir. 1990)). An inmate's First Amendment rights are

---

[4] The Court expresses no opinion about whether these allegations would survive a motion to dismiss or a motion for summary judgment.

12

"[b]alanced against . . . the interests of prison officials charged with complex duties arising from the administration of the penal system." *Ford*, 352 F.3d at 588; *see also Weathers v. Rock*, No. 12-CV-1301, 2014 WL 4810309, at *4 (N.D.N.Y. Sept. 23, 2014) (explaining that the right of inmates to freely exercise a chosen religion "is not limitless, and may be subject to restrictions relating to legitimate penological concerns"). A prisoner's free exercise claim, therefore, is judged under a "reasonableness test" that is less restrictive than that normally applied. *Brandon v. Kinter*, 938 F.3d 21, 32 (2d Cir. 2019) (quoting *Ford*, 352 F.3d at 588).

To prevail on a First Amendment claim, a plaintiff must show: (1) he or she has a sincerely held religious belief; (2) the belief was substantially burdened; and (3) the defendants' conduct was not reasonably related to some legitimate penological interest. *See, e.g.*, *Barnes v. Furman*, 629 F. App'x 52, 55 (2d Cir. 2015) (first citing *Holland v. Goord*, 758 F.3d 215, 220–23 (2d Cir. 2014), and then citing *Ford*, 352 F.3d at 588–94). The Second Circuit has not yet decided whether the substantial burden test continues to apply;[5] absent further instruction from the Second Circuit, courts in

---

[5] The Second Circuit "has not yet decided whether the substantial burden requirement remains good law" after the Supreme Court's decision in *Employment Division, Department of Human Resources of Oregon v. Smith*, 494 U.S. 872 (1990). *Brandon*, 938 F.3d at 32 n.7 (noting the question is unresolved and assuming without deciding that the plaintiff's free exercise claim is still subject to the substantial burden requirement); *see also Baltas v. Erfe*, No. 3:19cv1820 (MPS), 2020 WL 1915017, at *16 n.6 (D. Conn. Apr. 20, 2020) (citing Second Circuit cases). Because the Second Circuit has not explicitly addressed the issue, this Court analyzes Lyon's claims assuming the substantial burden test applies. *See Green Haven Prison Preparative Meeting of Religious Soc'y of Friends v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 16 F.4th 67, 83-86 (2d Cir. 2021) (applying the substantial burden test, without comment); *Baltas*, 2020 WL 1915017, at *16 n.6 (noting the outstanding question and applying the substantial burden test); *DeJesus v. Bradt*, 174 F. Supp. 3d 777, 784 n.2 (W.D.N.Y. 2016) (same).

this circuit continue to require a prisoner to "show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Brandon*, 938 F.3d at 32 (quoting *Holland*, 758 F.3d at 220). A substantial burden on religious exercise "exists where the state put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." *DeJesus*, 174 F. Supp. 3d at 785 (quoting *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996)).

Here, Lyon alleges that Major Raymond A. Hodge denied his religious request to observe a "harvest feast" indicative of his religion, Odinism. Dkt. 19, at 1, 3. Major Hodge responded to Lyon's request by asking for more information, including "what" and "when is Harvest Feast," "the background of Harvest Feast," why Lyon felt entitled to celebrate Harvest Feast, and to which religion Harvest Feast belongs. *Id.* at 4. Lyon replied: "Harvest Feast is on [the] 23[rd.] This festival marks the coming of winter and the celebration of a successful harvest to sustain the people. Some groups offer this blot to odin, others honor Thor." *Id.* at 5. He identified his religion as "heathen-odinist-Asatra" and "faith with the gods-our way-Pagan" and "Heathen." *Id.* Lyon also listed other dates, namely: "October-16- Feast of the Disir/Alfablot (Winter Nights)," "November-11- Feast of the Einherjar," and "December-20 and 21- High Feast of Yule (Mother Night)." *Id.*

On September 23, 2021, Major Hodge denied Lyon's request "based on the facts" supplied and his research, which "contradict[ed] most of the facts" Lyon provided, including the dates of the Harvest Feast. Dkt. 19, at 2. Major Hodge also asked for "a name and contact information of someone that can give [him] more information and or provide written information about anything [that Lyon is] entitled to based on [his]

14

religion." *Id.* Despite the conflicting information obtained by Major Hodge, a liberal construction of the complaint leads this Court to conclude that, at this screening stage,[6] Lyon pleaded sufficient allegations for his First Amendment free exercise claim to proceed to service against Major Hodge.[7]

## G.     Failure to Protect

The Constitution imposes a duty on prison officials to "take reasonable measures to guarantee the safety of . . . inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks and citation omitted). But not every assault "translates into constitutional liability for prison officials responsible for the victim's safety." *House v. City of N.Y.*, No. 18 Civ. 6693, 2020 WL 6891830, at *11 (S.D.N.Y. Nov. 24, 2020) (internal quotation marks and citation omitted). Failure to protect or to intervene "is a Fourteenth Amendment violation where the officer acted with 'deliberate indifference to a substantial risk of serious harm to an inmate.'" *Rosen v. City of N.Y.*, 667 F. Supp. 2d 355, 359-60 (S.D.N.Y. 2009) (quoting *Farmer*, 511 U.S. at 828).

To state a failure to protect claim, a detainee must allege that the deprivation was "sufficiently serious," and that the defendant was deliberately indifferent to the detainee's "health or safety." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (internal quotation marks omitted). The "objective prong can be satisfied even where

---

[6] The Court expresses no opinion about whether these allegations would survive a motion to dismiss or a motion for summary judgment.

[7] The Court will direct the Clerk of Court to add this Defendant to the caption of this case.

no serious physical injury results"; in sum, when "assessing whether the risk of an inmate's violence against other inmates is sufficiently serious, to trigger constitutional protection, the focus of inquiry must be, not the extent of the physical injuries sustained in an attack, but rather the existence of a substantial risk of serious harm." *Randle v. Alexander*, 960 F. Supp. 2d 457, 473–74 (S.D.N.Y. 2013) (internal quotation marks omitted). To plead deliberate indifference in this context, a plaintiff must allege facts that an official intentionally failed to protect him or her, or "recklessly failed to act with reasonable care to mitigate the risk" of an impending attack from another inmate, when the official "knew, or should have known," that failure to protect "posed an excessive risk" to the plaintiff's health or safety. *See Darnell*, 849 F.3d at 35. Courts within the Second Circuit have recognized a substantial risk of serious harm where "there is evidence of a previous altercation between a plaintiff and an attacker, coupled with a complaint by plaintiff regarding the altercation or a request by plaintiff to be separated from the attacker." *Sutton v. Rodriguez*, No. 18-CV-01042, 2021 WL 2894834, at *5 (S.D.N.Y. July 9, 2021) (quoting *Luckey v. Jonas*, No. 18-CV-8103, 2019 WL 4194297, at *4 (S.D.N.Y. Sept. 4, 2019)).

Here, Lyon alleges that he notified CO Angela Calkins of the risk of harm from inmate Mcarthur due to Lyon and Mcarthur's previous run-ins with each other, and requested that Mcarthur be moved to another floor/unit "before something happens." Dkt. 7, at 1. Calkins replied: "Something needs to [happen] to him." *Id.* Lyon alleges that inmate Brooks also warned Calkins about Mcarthur. *Id.* Calkins responded: "Good. I hate him, Inmate Mcarthur." *Id.* Later, on July 13, 2021, Lyon got into a fight with Mcarthur. *Id.* It is unclear from the pleadings whether Lyon initiated the

16

fight or was the victim of an attack. The distinction is significant because "[a]n inmate's own violent tendencies are not the type of substantial risk of serious harm protected by the Constitution." *Pecuch v. Platt*, No. 13-CV-6102, 2015 WL 6505109, at *3 (W.D.N.Y. Oct. 27, 2015) (internal quotation marks omitted) (citing *Price v. Engert*, 589 F. Supp. 2d 240, 247 (W.D.N.Y. 2008) (inmate plaintiff failed to provide evidence that he was subjected to a substantial risk of harm, where plaintiff was injured "only after [he] became violent and belligerent")); *Parks v. City of N.Y.*, No. 04 CIV. 2490, 2006 WL 944659, at *6 (S.D.N.Y. Apr. 11, 2006) (plaintiff was the instigator and, therefore, could not recover on a failure to warn claim, where plaintiff was injured while carrying out a plan to rob a fellow inmate)). Lyon's failure to protect claim against Calkins is dismissed. But Lyon may amend this claim to include additional allegations, if possible, to meet the above standard.

## H.    Inhumane Confinement Conditions

Prisoners "may not be deprived of their basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety—and . . . may not be exposed to conditions that pose an unreasonable risk of serious damage to [their] future health." *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (citation and internal quotation marks omitted). To plead an unconstitutionally inadequate conditions of confinement claim, a detainee must allege establish deliberate indifference. *Walker*, 717 F.3d at 125. In particular, the detainee must allege (1) an objectively, sufficiently serious unsanitary condition, and (2) deliberate indifference on the part of the defendant-official. *See Willey v. Kirkpatrick*, 801 F.3d 51, 66 (2d Cir. 2015). Courts assess Fourteenth Amendment

17

deliberate indifference claims under an objective standard. *See Darnell*, 849 F.3d at 36.

Here, Lyon alleges that his living conditions were unsanitary, with "ping pong toilets," where sewage backs up and overflows into the cells when the toilet is flushed. Dkt. 20, at 1; *see Gaston v. Coughlin*, 249 F.3d 156, 166 (2d Cir. 2001) (inmate's exposure to human waste was sufficiently severe for an inadequate conditions claim); *Lusmat v. Paoosha*, No. 3:20-CV-01386, 2021 WL 3206843, at *15 (D. Conn. July 29, 2021) (allowing an unsanitary conditions of confinement claim to proceed where "the cell was filled with feces, throw-up, spit, and that Lusmat was unable to relieve himself because the toilet would not flush and was full of feces."); *see also LaReau v. MacDougall*, 473 F.2d 974, 978 (2d Cir. 1972) ("Causing a man to live, eat and perhaps sleep in close confines with his own human waste is too debasing and degrading to be permitted."). Lyon also alleges that there is "dirty ventilation," and that he bathes in moldy and dusty shower facilities. Dkt. 20, at 1; *see Robles v. Coughlin*, 725 F.2d 12, 16 (2d Cir. 1983) (reversing dismissal of plaintiff's complaint, where he was subjected to "confiscation of personal property without explanation, contamination of food, starvation, and confinement in unlit, unventilated strip cells") (internal citations omitted).

Lyon's allegations of repeated sewage back-ups that seep into cells, poor ventilation, and moldy showers are sufficient, at this stage,[8] to state a Fourteenth

---

[8] The Court expresses no opinion about whether these allegations would survive a motion to dismiss or a motion for summary judgment.

Amendment conditions of confinement claim. Lyon's claim against Defendant Schrom will proceed to service.

## I.     Retaliation Claim

A plaintiff claiming retaliation must allege that he or she engaged in constitutionally protected speech or conduct, and that the protected activity was a substantial motivating factor for "adverse actions" taken against him or her by the defendants. *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003). Courts may "approach prisoner retaliation claims 'with skepticism and particular care,' because 'virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act.'" *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003) (quoting *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)).

To plead a retaliation claim, a plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Dolan v. Connolly*, 794 F.3d 290, 294 (2d Cir. 2015) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009)). "Adverse action," defined objectively, is "retaliatory conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004) (quoting *Davis*, 320 F.3d at 353). When evaluating whether a plaintiff has established the necessary causal connection of a retaliation claim:

19

> a court may infer an improper or retaliatory motive in the adverse action from: (1) the temporal proximity of the filing to the grievance and the disciplinary action; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining the plaintiff.

*Shariff v. Poole*, 689 F. Supp. 2d 470, 479 (W.D.N.Y. 2010). A plaintiff may establish a causal connection by alleging that a protected activity, such as filing a grievance, was "close in time" to the alleged adverse action. *Espinal*, 558 F.3d at 129.

Filing grievances and lawsuits to petition the government for redress are protected activities. *See Jones v. Coughlin*, 45 F.3d 677, 679–80 (2d Cir. 1995) (noting a prisoner's constitutional right to petition the government for redress of grievances); *Bennett*, 343 F.3d at 138–39 (reversing dismissal on prisoner's retaliation claim where disciplinary charges were filed as plaintiff was in the process of successful settling a lawsuit against prison officials, and the disciplinary charges were found to be unjustified).

Here, Lyon alleges that, in retaliation against him for filing numerous grievances, this lawsuit, and a request for a TRO, prison officials at Chemung moved him to a cell with no sink and destroyed his magazines. Dkt. 24, at 1. He does not allege personal involvement of a named Defendant. Rather, he alleges "*[t]hey* are [pul]ling the staples out so the magazines fall[] apart," Dkt. 23, at 1, and "[t]he (TRO) made *the COs* more spiteful[]," Dkt. 24, at 1 (emphasis added); *see Champion v. Artuz*, 76 F.3d 483, 486-87 (2d Cir. 1996) (upholding summary judgment dismissing prisoner's retaliation claims where defendants were not personally involved). Lyon may be able to show temporal proximity between the filing his motion for a TRO and his subsequent transfer to a cell without a sink for him to wash his hands, drink

20

water, or wash clothes. But removing staples from the magazines of an inmate placed on suicidal watch is not an adverse action for the purposes of this claim. *See Eze v. Higgins*, No. 95-CV-6S, 1996 WL 861935, at *7 (W.D.N.Y. Mar. 20, 1996) ("Prison officials who know or should know of a potential suicide risk to an inmate have an obligation to protect that inmate from self-inflicted injury.") (citing *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984)).

Based on all of this, Lyon's retaliation claim is dismissed, with leave to amend in part, as follows. Lyon may amend his retaliation claim based on transfer to a cell with no sink to allege personal involvement of a named Defendant, if possible. But, to the extent it is based on removal of staples from magazines, Lyon's retaliation claim is dismissed without leave to amend.

## IV.    Motion to Appoint Counsel

Lyon moved to appoint counsel. Dkt. 13. When deciding whether to grant a request for counsel by an indigent party, courts consider "a variety of factors." *See Hodge v. Police Officers*, 802 F.2d 58, 60 (2d Cir. 1986). As a "threshold matter, . . . the district court must consider the merits of the . . . claim." *Id.* If the threshold inquiry indicates that the plaintiff "appears to have some chance of success," the court should consider other factors, including: (1) "the nature of the factual issues the claim presents"; (2) "the plaintiff's apparent ability to present the case"; and (3) whether "the legal issues presented are complex." *Id.* at 60–61.

Because Defendants have not yet responded to Lyon's allegations in the complaint upon this Court's screening, the Court lacks sufficient information to

21

complete the inquiry set forth in *Hodge*. The Court therefore denies Lyon's request for appointment of counsel as premature.

## V.    *Valentin* Order

The complaint asserts excessive force claims against Deputy Does #1 and #2. *See* Dkt. 8, at 1. Pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) (per curiam), the Court requests that the Chemung County Attorney's Office ascertain the full names of the John Doe Defendants Lyon seeks to sue. The County Attorney's Office also shall provide the addresses where the John Doe Defendants can currently be served. The County Attorney's Office need not undertake to defend or indemnify these individuals at this time. Rather, this order merely provides a means by which Lyon may name and properly serve those unidentified Defendants as instructed by the Second Circuit in *Valentin*.

The Chemung County Attorney's Office shall produce the information specified above regarding the identities of the John Doe Defendants, by **August 14, 2023**, by forwarding it to the Court's *Pro Se* Unit, United States District Court, 2120 Kenneth B. Keating Federal Building, 100 State Street, Rochester, New York 14614.[9] Once the Court receives this information, Lyon's complaint shall be deemed amended to reflect

---

[9] If the response is instead filed on CM/ECF, it must be submitted by selecting "*Valentin* Response" under "Discovery Documents." Responses filed using this method are reviewed by Court personnel before being made public.

22

the full names of the Defendants, summonses shall issue, and the Court directs service on the Defendants.[10]

**CONCLUSION**

For the reasons above, Lyon's Fourth Amendment excessive force claims against Deputy Does #1 and #2, First Amendment free exercise claim against Major Raymond Hodge, and Fourteenth Amendment conditions of confinement claim against Sheriff William Schrom may proceed to service. Lyon's retaliation claim based on removal of staples from his magazines is dismissed without leave to amend. Lyon's remaining claims[11] are dismissed, pursuant to 28 U.S.C. § 1915(e)(2)(B), unless he files an amended complaint, as directed below, that includes the necessary allegations regarding his claims as explained above and in a manner that complies with Rules 8 and 10 of the Federal Rules of Civil Procedure. Additionally, Lyon must show cause why his illegal search claim should not be dismissed as barred by the favorable termination rule set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994).

An amended complaint is intended to **completely replace** the prior complaint in the action. *See Arce v. Walker*, 139 F.3d 329, 332 n.4 (2d Cir. 1998) ("It is well established that an amended complaint ordinarily supersedes the original and renders

---

[10] If Lyon files an amended complaint as directed in this decision and order, service on Defendants will be deferred until such time as the Court has screened the amended complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a).

[11] To the extent that Plaintiff is alleging a due process violation against Lt. Anthony Vitucci for failing to properly process his grievances, *see* Dkt. 7, at 1, this claim is dismissed, without leave to amend. Lyon "has no constitutionally protected right of access to an administrative grievance process at a prison facility." *Nicholson v. Hammond*, No. 9:13-CV-0748, 2016 WL 3369286, at *9 (N.D.N.Y. May 19, 2016), report and recommendation adopted, No. 9:13-cv-748T, 2016 WL 3365442 (N.D.N.Y. June 16, 2016) (collecting cases).

23

it of no legal effect." (quoting *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977))); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994). Any amended complaint must include all of Lyon's claims, so it may stand alone as the sole complaint Defendants must answer.

## ORDER

IT HEREBY IS ORDERED that Lyon's motion to appoint counsel (Dkt. 13) is denied as premature; and it is further

ORDERED that the Clerk of Court shall add Major Raymond Hodge, John Doe #1, and John Doe #2 as Defendants to this case; and it is further

ORDERED that Lyon may submit an amended complaint, as directed above, by **August 24, 2023**; and it is further

ORDERED that, if Lyon does not submit an amended complaint, as directed above, his municipal liability, denial of visitation, denial of medical care, illegal search, failure to protect, and retaliation (based on cell transfer) claims will be dismissed; and it is further

ORDERED that Lyon's retaliation claim based on removal of staples from magazines is dismissed; and it is further

ORDERED that the Clerk of Court shall send to Lyon, along with a copy of this order, a copy of the documents constituting the original complaint (Dkts. 1, 7, 8, 19, 20, 24), a blank Section 1983 complaint form, and the instructions for preparing an amended complaint; and it is further

ORDERED that, if Lyon fails to file an amended complaint as directed above, the Clerk of Court shall file Lyon's papers and cause the United States Marshal to

24

serve copies of the summons, Dkts. 1, 7, 8, 17–20, 22–25, and this order upon Defendants William Schrom, Deputy Does #1 and #2 (once identified), and Raymond Hodge without Lyon's payment therefore, unpaid fees to be recoverable if this action terminates by monetary award in Lyon's favor; and it is further

ORDERED that the Clerk of Court shall forward a copy of the summons, Dkts. 1, 7, 8, 17–20, 22–25, and this decision and order to the Chemung County Law Department, 167 Lake Street, Elmira, New York 14902; and it is further

ORDERED that the Clerk of Court shall utilize the mailing address for non-inmate mail provided by the New York State Department of Corrections and Community Supervision's website as needed; and it is further

ORDERED that, pursuant to 42 U.S.C. § 1997e(g)(2), Defendants shall respond to the complaint upon service.

JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE

DATED:    July 10, 2023
          Buffalo, New York

25